## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BRANDON HOLMAN,

      Plaintiff,

      v.

NURSE TRIPLETT, BARBARA DAVIS,
AND COUNTY OF COOK

      Defendants.

Case No. 1:17-cv-4710

Judge John Robert Blakey

### MEMORANDUM OPINION AND ORDER

Plaintiff Brandon Holman sues Defendants Cook County, Nurse Triplett, and Barbara Davis under the Civil Rights Act, 42 U.S.C. Section 1983, the Fourteenth Amendment, the Rehabilitation Act of 1973, and the Americans with Disabilities Act (ADA) after he tore his Achilles tendon while detained at Cook County Jail. The parties cross-move for summary judgment. [99]; [103]. For the reasons explained below, this Court denies Plaintiff's motion [99], and grants in part and denies in part Defendants' motion [103].

## I.    Background

### A.    The Parties

At all relevant times, Plaintiff was a pretrial detainee at Cook County Jail. [101] at ¶ 1. Defendants Dolores Triplett and Barbara Davis both work in Division 10 of Cook County Jail, where Triplett serves as a licensed practical nurse (LPN) and Davis serves as a physician's assistant (PA). *Id.* at ¶¶ 2, 3.

### B.     Cook County's Nursing Guidelines

At all relevant times, Cook County Health and Hospital Systems maintained a copy of its second edition of "Nursing Guidelines," which includes a section on "Strains, Sprains, and Minor Trauma." [105] at ¶ 8. The parties agree that the Nursing Guidelines supply the appropriate course of treatment that LPNs like Triplett should provide to pretrial detainees. *Id.* at ¶ 4; [129] at ¶ 1.

The "Strains, Sprains, and Minor Trauma" section of the Nursing Guidelines divides into further subsections. [105-7] at 1–2. The first subsection, labeled "Subjective/Patient Overview (S)," states that the medical treater should: "Inquire regarding turning or twisting injury of joint, pain difficulty-bearing weight and if snap or pop heard." *Id.* at 1. Another subsection, labeled "Objective (O)," provides that a treater should: (1) check vital signs; (2) perform a "Musculo/skeletal assessment and documentation i.e. tenderness, pain with movement, spasms, symmetry, range of motion, weakness, swelling discoloration and gait"; and (3) perform a "Neuro/vascular assessment & documentation i.e. palpable distal and proximal pulses, sensation intact, no numbness, no tingling, warm to touch and reflexes intact." *Id.*

Another subsection, labeled "Assessment (A)," further directs a medical treater to consider treating a detainee by: (1) immobilizing the injury; (2) considering crutches, compressions; (3) providing activity restrictions; and (4) providing over the counter medications. *Id.* Finally, the Nursing Guidelines direct a medical treater— under the "Plan of Care (P)" subsection—to "[c]onfer with a medical provider" if: (1)

the pretrial detainee's condition "is not responding to the nursing guideline"; (2) the detainee exhibits impaired "muscular/skeletal changes i.e. unstable joint, suspected fracture, crepitus sounds, gross swelling, severe pain, severe ecchymosis, focal or severe tenderness"; (3) the detainee exhibits impaired neuro/vascular changes "i.e. altered distal circulation or sensation"; or (4) the mechanism of injury suggests additional trauma. *Id.* at 2. A "provider," as contemplated by the Nursing Guidelines, is a physician's assistant or a doctor. [105] at ¶ 13.

### C.   Plaintiff's Injury and Defendant Triplett

Sometime in early August 2016, Plaintiff was transported to the dispensary of Division 10; there, he complained of left calf pain and said he heard a "pop" while playing basketball in the recreational area of Cook County Jail. [105] at ¶ 14; [101] at ¶ 7. The dispensary functions as a clinic where pretrial detainees receive basic treatment. [105] at ¶ 15.

Plaintiff asserts that this basketball injury occurred on August 1, 2016 and that Triplett examined him at the dispensary that day. [101] at ¶ 8. According to Plaintiff, he told Triplett he heard a "pop" and felt sharp pain in his left ankle, after which Triplett examined Plaintiff's left leg and informed him: "It's only a pulled calf muscle." *Id.* at ¶¶ 8, 9. Plaintiff also maintains that he asked Triplett to have his leg x-rayed, explaining that his left foot turned to the side when he walked and that he was "in excruciating pain and suspected he had a torn Achilles tendon." *Id.* at ¶ 10. According to Plaintiff, Triplett informed Plaintiff he could not obtain an x-ray because no x-ray technician was then available. *Id.* Defendants dispute that this interaction

3

occurred and assert that no medical record corroborates Plaintiff's account that Triplett examined or otherwise treated him on August 1, 2016. [111] at ¶¶ 7–10; [105] at ¶ 14 n.1.[1]

Regardless of their dispute over the events that Plaintiff alleges occurred on August 1, the parties do agree that Plaintiff appeared at the dispensary on August 8, 2016, complaining of left calf pain. [101] at ¶¶ 11–12; [105] at ¶ 14. On that date, non-party paramedic Kirsten Bain-Norris performed the subjective, objective, and assessment (SOA) portions of the Nursing Guidelines' section on "Strains, Sprains, and Minor Trauma." [105] at ¶¶ 18–19. Bain-Norris took Plaintiff's vitals and assessed his calf, ankle, and foot, noting in a Nursing Progress Note that she observed no "swelling or deformity to calf, ankle, or foot," that Plaintiff could "speak full, complete sentences without difficulty, and that she saw "no other visible DCAP-BTLS (deformity, discoloration, contusions, abrasions, punctures, penetrations, burns, tenderness, lacerations, swelling)." *Id.* at ¶ 19.

Defendant Triplett was "notified and present for triage" at the time, and after Bain-Norris performed the SOA portions of the Nursing Guidelines, Triplett

---

[1] Defendants ask this Court to disregard Plaintiff's account of events that allegedly occurred on August 1, 2016—specifically, that he asked Triplett for an x-ray, and Triplett informed him no x-ray technicians were available—which Plaintiff sets forth in a declaration accompanying his motion for summary judgment. [113] at 7–9. Defendants argue that Plaintiff testified in his deposition that he did not ask for an x-ray, and thus, that his declaration statement constitutes a contradiction that should be disregarded under the sham affidavit doctrine. *Id.* But under that doctrine, district courts only disregard statements in a declaration where the declarant's deposition contains "contradictions so clear that the only reasonable inference was that the affidavit was a sham designed to thwart the purposes of summary judgment." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015). Here, Plaintiff explains that he misspoke or was confused in his deposition because defense counsel was jumping from questioning about different dates that he saw different medical treaters. [118] at 4. This Court finds this a plausible explanation and thus declines to disregard Plaintiff's declaration account. *Castro*, 786 F.3d at 571 (a plausible explanation can overcome the finding of a sham affidavit).

4

performed the plan of care (P) portion. *Id.* at ¶ 20. Triplett did not possess the ability to provide crutches to detainees. *Id.* at ¶ 25. But Triplett did provide Plaintiff with ibuprofen and an ice bag and instructed Plaintiff to elevate and rest his left leg; she also educated Plaintiff on using the ice bag and directed Plaintiff to fill out a Health Service Request Form (HSRF). *Id.* at ¶ 20. Plaintiff then returned to his tier. *Id.*

The same day, Plaintiff filled out and submitted an HSRF, stating:

> I injured my leg when I was playing basketball something popped and now my leg from ankle to calf is severely in pain seeking an elastic bandage to wrap it and a heat pack if possible ice only made it more painful looking for some form of relief please! Thank you

*Id.* at ¶ 21; [101] at ¶ 11. A nurse collected and reviewed Plaintiff's HSRF the next day—August 9, 2016. [105] at ¶ 21. Triplett did not treat Plaintiff again after August 8, 2016. *Id.* at ¶ 23.

### D.    Other HSRFs

Two days after his assessment at the dispensary, on August 10, 2016, non-party nurse Kim Anderson saw Plaintiff, and noted Plaintiff's complaints about his left leg injury had been resolved and he had no further complaints. [105] at ¶ 36. But the next day, August 11, 2016, Plaintiff submitted another HSRF stating: "ankle is still bothering me. I'm still in pain and it is swollen." [101] at ¶ 15; [105] at ¶ 37. On August 12, 2016, Nurse Anderson examined Plaintiff again in response to his HSRF, observing normal alignment and symmetry of the left ankle. [101] at ¶ 16; [105] at ¶ 38.

About a month later, on September 22, 2016, Plaintiff submitted another HSRF stating: "I would like to have an x-ray or MRI on my leg. Still in a lot of pain

5

when walking.  It feels as if my ankle is on fire.  I've tried icing it, pain killer, and nothing is working."  [101] at ¶ 17; [105] at ¶ 39.  The next day, Nurse Anderson examined Plaintiff in response to his September HSRF.  [101] at ¶ 18; [105] at ¶ 40.  During this examination, Plaintiff indicated he had injured his leg when he "slipped on water Tuesday."  [105] at ¶ 40.  She further observed that Plaintiff exhibited normal alignment and symmetry of his left leg, ambulated with a steady, stable gait, and showed no swelling.  *Id.* at ¶ 40.  Nurse Anderson gave Plaintiff 24 tablets of ibuprofen.  *Id.*

On October 9, 2016, Plaintiff submitted a fourth HSRF stating:  "It has been over 2 months since I injured my foot/ankle and it is not improving.  I was told that someone would get me down to Cermak but have not been called yet.  Do not want a permanent limp.  Please and Thank you!"  [101] at ¶ 19; [105] at ¶ 41.  Three days later, non-party Registered Nurse Gresham-Trotter examined Plaintiff in response to his October HSRF.  [101] at ¶ 20.  Nurse Gresham performed a musculoskeletal exam and noted that Plaintiff told her he had been experiencing pain and swelling for "over 2 months now," that he had been injured from playing basketball, and that she observed swelling at or near Plaintiff's Achilles.  [105] at ¶ 42.  Nurse Gresham also noted that Plaintiff reported pain with movement and impaired physical mobility.  *Id.* After performing a pain assessment, Nurse Gresham provided Plaintiff with ibuprofen and referred Plaintiff to the primary care clinic.  *Id.*

### E.      Defendant Davis

On October 19, 2016, Defendant Davis examined Plaintiff and suspected a left Achilles tendon rupture. *Id.* at ¶ 26. Davis gave Plaintiff crutches and ibuprofen, issued him a lower bunk alert, made an "urgent" referral to the orthopedic clinic at John Stroger Hospital (Stroger), and scheduled an MRI to better understand the injury. *Id.* at ¶ 27. Although she made the "urgent" referral, Davis has no control over scheduling at Stroger, as Stroger maintains its own scheduling system. *Id.* at ¶ 28. Pursuant to Davis' referral, the Stroger orthopedic clinic evaluated Plaintiff on October 26, 2016 and confirmed that Plaintiff ruptured his left Achilles tendon; the clinic then referred Plaintiff to an orthopedist for further work up. *Id.* at ¶ 30.

Plaintiff asserts that, despite Davis' orders, Plaintiff "was not allowed to use the crutches [prescribed by Davis] on the tier where [his] cell is located." [102-2] at 4. He additionally asserts that he "was never given a lower bunk in my cell while at Cook County Jail." *Id.*

Davis examined Plaintiff again on December 2, 2016, at which time she reordered his crutches, ordered a follow-up with the orthopedic clinic, and recommended he receive physical therapy. *Id.* at ¶ 35.

### F.      Plaintiff's Mobility After His Injury

After his injury, between August 2016 and October 19, 2016, Plaintiff could bear weight on his injured ankle, perform pushups, walk up and down stairs, and climb up and down from his bunk, though sometimes with pain and difficulty. [105]

at ¶¶ 54–55; [105-1] at 10, 13–14, 29. By January 19, 2018, Plaintiff no longer needed any physical therapy. *Id.* at ¶ 53.

### G. Plaintiff's Claims

In his third amended complaint, Plaintiff alleges: a claim under 42 U.S.C. § 1983 against Triplett and Davis for violating his Fourteenth Amendment Rights (Count I); municipal liability under *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978) against Cook County (Count II); and violations of the Rehabilitation Act and the ADA against Cook County (Counts III and IV). [47].

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). To satisfy that burden, the non-moving party "must do more than simply

8

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III.    Analysis

Defendants move for summary judgment on all counts, [104], and Plaintiff moves for summary judgment as to liability only on Counts I, II, and IV, [100] at 1. This Court considers each count in order below.

### A.    Count I: Fourteenth Amendment Claim

In Count I, Plaintiff asserts that Triplett and Davis acted with "deliberate indifference" to his Achilles injury, violating the Fourteenth Amendment. [47] at ¶ 79. As a threshold matter, "objective reasonableness," not "deliberate indifference," governs claims under the Fourteenth Amendment for inadequate medical care provided to pretrial detainees. *Pulera v. Sarzant*, 966 F.3d 540 (7th Cir. 2020); *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018); *Miranda v. Cty. of Lake*, 900 F.3d 335, 351 (7th Cir. 2018). This "objective reasonableness" standard "is easier for a plaintiff to meet than the subjective deliberate-indifference standard" applied to claims brought by convicted detainees. *Pulera*, 966 F.3d at 540.

Plaintiff must prove two elements to show that a Defendant demonstrated objectively unreasonable conduct. *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir.

2019).  First, Plaintiff must show that Defendants acted "purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff]'s case." *McCann*, 909 F.3d at 886 (quoting *Miranda*, 90 F.3d at 353).  A showing of negligence or even gross negligence will not suffice under this first prong. *Id.*; *Williams*, 937 F.3d at 942.  Second, Plaintiff must prove that the "challenged conduct was objectively unreasonable in light of the totality of the relevant facts and circumstances." *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020).  In other words, courts must view the evidence and gauge objectively, without regard to any subjective belief held by an individual defendant, whether the response "was reasonable." *McCann*, 909 F.3d at 886.  With these standards in mind, this Court considers Triplett's and Davis' actions.

### 1.  Triplett

Plaintiff first contends that Triplett violated the Fourteenth Amendment when she failed to refer him to a provider (a doctor or a physician's assistant) when she saw him on August 8, 2016.  [110] at 4–5.  Plaintiff bases this contention upon his recollection that he complained to Triplett of hearing a "pop" when he injured himself, and under those circumstances, the Nursing Guidelines direct Triplett to consult a provider.  *Id.* at 5.  Plaintiff's contention is, however, belied by the plain language of the Nursing Guidelines.

The Nursing Guidelines only direct a treater like Triplett to consult with a provider if: (1) the pretrial detainee's condition "is not responding to the nursing guideline"; (2) the detainee exhibits impaired "muscular/skeletal changes i.e.

10

unstable joint, suspected fracture, crepitus sounds, gross swelling, severe pain, severe ecchymosis, focal or severe tenderness"; (3) the detainee exhibits impaired neuro/vascular changes "i.e. altered distal circulation or sensation"; or (4) the mechanism of injury suggests additional trauma. [105-7] at 2. The record contains no indication that Triplett or Paramedic Bain-Norris—who examined Plaintiff— observed any of these conditions on August 8, 2016. To the contrary, Bain-Norris noted that she observed no "swelling or deformity to calf, ankle, or foot," that Plaintiff could "speak full, complete sentences without difficulty, and that she saw "no other visible DCAP-BTLS (deformity, discoloration, contusions, abrasions, punctures, penetrations, burns, tenderness, lacerations, swelling)." [105] at ¶ 19. This Court thus finds that Triplett's failure to consult a provider on August 8, 2016 was not objectively unreasonable.

Plaintiff also posits that Triplett violated his Fourteenth Amendment Rights by failing to take actions seven days earlier, on August 1, 2016, when he complained to her of "excruciating pain." [110] at 2–3; [101] at ¶ 10. Under the Nursing Guidelines, a detainee's complaints of "severe pain" warrants a consultation with a provider, [105-7] at 2, and the parties agree that Triplett did not consult a provider. Defendants counter that this August 1 interaction never occurred, citing the nonexistence of medical records corroborating Plaintiff's account. [113] at 9. But Plaintiff has offered evidence—in the form of his declaration and his deposition testimony—to show that the encounter did take place on August 1. [102-2] at 3; [105-1] at 9. And this Court cannot resolve any conflicting evidence on summary judgment;

11

rather, these conflicts only create genuine issues of material fact suitable for trial. *Williams v. City of Chicago*, 733 F.3d 749, 761 (7th Cir. 2013). Thus, to the extent that Nursing Guidelines supply the appropriate standard of care, Triplett's failure to escalate Plaintiff's complaints of pain raises a triable issue about whether she acted objectively unreasonably on August 1 and whether her decision to not consult a provider on that date was reckless. *E.g.*, *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (noting that deliberate indifference can be proven by a medical professional's failure to follow an existing protocol).

And even if the Nursing Guidelines did not supply the appropriate standard of care, this Court finds that Plaintiff has raised a triable issue as to whether his complaints of "excruciating pain" warranted Triplett to take further—or more immediate—action. An "unnecessary delay in treatment" can constitute a Fourteenth Amendment injury if it unnecessarily prolonged a detainee's pain. *Turner v. Reena*, No. 17 C 2434, 2019 WL 2357031, at *4 (N.D. Ill. June 4, 2019), *aff'd sub nom. Turner v. Paul*, 953 F.3d 1011 (7th Cir. 2020); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (a "delay in the provision of medical treatment for painful conditions—even non-life-threatening conditions—can support a deliberate-indifference claim"); *see also, e.g.*, *Rayne v. Gannon*, No. 118CV00076JPHDML, 2020 WL 2840029, at *8 (S.D. Ind. June 1, 2020) (denying nurses' motion for summary judgment because they failed to escalate the situation for further diagnosis and treatment when they examined a pretrial detainee complaining of severe pain).

Defendants also suggest that qualified immunity insulates Triplett from liability because Plaintiff "cannot provide any evidence or prior precedent to establish" that Triplett's conduct "violated his constitutional rights." [113] at 16. Defendants fail to fully develop, and therefore waive, this argument. *M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Regardless, by 2016, the law clearly established that a pretrial detainee "was entitled to objectively reasonable medical care and failing to provide any medical care in light of a serious medical need was objectively unreasonable." *Estate of Perry v. Wenzel*, 872 F.3d 439, 445 (7th Cir. 2017). This Court thus rejects Defendants' qualified immunity argument.

For these reasons, this Court denies the parties' cross motions as to Nurse Triplett.

### 2. Davis

Turning next to Davis, the record demonstrates that she examined Plaintiff on October 19, 2016, at which time she suspected an Achilles tendon rupture; she then gave Plaintiff crutches, ibuprofen, issued him a lower bunk alert, made an "urgent" referral to the orthopedic clinic at Stroger, and scheduled an MRI. [105] at ¶¶ 26, 27.

Plaintiff first argues that Davis violated the Fourteenth Amendment by doing "nothing to ensure her patient received an urgent consult for another 7 days" after she saw him on October 19, 2016. [100] at 7. Not so. Where a medical defendant possesses "no control over the scheduling" of appointments, then neither that

13

defendant's failure to schedule the plaintiff for an appointment nor her "failure to nag" the appropriate schedulers constitutes objectively unreasonable conduct. *Turner v. Paul*, 953 F.3d 1011, 1016 (7th Cir. 2020). And the undisputed evidence shows that Davis maintained no control over scheduling at Stroger. [105] at ¶ 28.

Plaintiff also claims that he was denied the use of his crutches on his tier and never received a lower bunk assignment, pinning these deficiencies on Davis' failure to ensure that her orders "were followed." [100] at 7. This argument fares no better, because Plaintiff fails to produce any evidence showing that Davis knew her orders were not being followed, or that Davis had any reason to believe her orders would *not* be followed. No jury could find that Davis acted "purposefully, knowingly, or recklessly" on this record. *Swisher v. Porter Cty. Sheriff's Dep't*, 761 F. App'x 616, 620 (7th Cir. 2019). Nor does the record indicate that Davis possessed any control over whether Plaintiff would ultimately be allowed to use his crutches on his tier or be assigned a lower bunk. The parties do not explain whether these decisions rested with correctional officers or with other medical personnel, but in any case, Plaintiff fails to point to any evidence suggesting that Davis had any role greater than putting in the orders. On this record, no reasonable jury could find that Davis acted objectively unreasonable in not following up further to ensure that others carried out her orders. *See Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002) (evidence of delays in treatment insufficient to demonstrate a doctor's deliberate indifference where those delays remained outside of the doctor's control).

14

Because Plaintiff fails to raise a triable issue as to Davis, this Court grants summary judgment in her favor.

### B.    Count II: *Monell* Claim

Turning to Plaintiff's *Monell* claim, Cook County faces liability under Section 1983 for constitutional injuries caused by a "policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields v. Ill. Dep't. of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014); *Miranda*, 900 F.3d at 344 (applying the "deliberate indifference" standard to *Monell* claim brought by pretrial detainee). To succeed on his *Monell* claim, Plaintiff must prove: (1) the deprivation of an underlying substantive constitutional right; (2) the existence of an official policy or other custom; and (3) that this policy or custom was the "moving force" behind the deprivation of his substantive constitutional rights. *See Pulera*, 966 F.3d at 540; *Teesdale v. City of Chi.*, 690 F.3d 829, 833 (7th Cir. 2012). To prevail, Plaintiff must provide evidence of more than "one or two missteps," and instead, must demonstrate the existence of "systemic and gross deficiencies." *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020) (internal quotation marks omitted).

Plaintiff first claims that Cook County faces *Monell* liability for maintaining a deficient HSRF process, asserting that despite the existence of this process and his submission of multiple HSRFs, Cook County ignored Plaintiff's "severe pain . . . for 2.5 months," "failed to obtain the urgent orthopedic consultation" Davis ordered on

15

October 19, 2016, and "failed to ensure" the implementation of Davis' orders regarding the crutches and lower bunk assignment. [100] at 8. This argument fails.

Though "not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience," it is "necessarily more difficult" because the law requires evidence of a "true municipal policy at issue, not a random event." *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (quoting *Phelan v. Cook Cty.*, 463 F.3d 773, 790 (7th Cir. 2006)); *see also Hildreth*, 960 F.3d at 426–27. In *Grieveson*, the Seventh Circuit ruled that "evidence of four incidents that [the plaintiff] alone experienced" failed to establish a widespread policy or custom. 538 F.3d at 775. The court recently reaffirmed this principle in *Hildreth*, holding that a plaintiff attempting to establish a *Monell* claim based solely upon his personal experiences must point to "numerous" incidents of misconduct, and that "four or more incidents over varying periods . . . are insufficient to qualify as a widespread practice or custom." 960 F.3d at 428.

As in *Grieveson* and *Hildreth*, Plaintiff's evidence supporting his *Monell* claim relates only to his personal experiences at Cook County Jail, and specifically to less than a handful of HSRFs he submitted about his injury. [101] at ¶ 19; [105] at ¶ 41. Under those precedents, Plaintiff falls short of establishing the requisite "widespread practice or custom" for a finding of *Monell* liability.

Plaintiff next argues that Cook County maintained a "system" that "wrongfully allowed LPNs" like Triplett "to make diagnostic decisions" when they possessed no such authority. [100] at 9. Plaintiff bases this argument upon his purported August

1, 2016 interaction with Triplett, when Triplett allegedly misdiagnosed him by saying he had merely pulled a calf muscle. *Id.* But just like his complaints about the HSRF process, Plaintiff fails to offer any evidence demonstrating that Triplett's alleged wrongful diagnosis "was undertaken pursuant to an official jail policy or widespread custom." *Grieveson*, 538 F.3d at 773. Instead, Plaintiff relies only upon his lone interaction with Triplett. Because the law does not recognize *Monell* liability on a record of personal, isolated experiences, this Court grants summary judgment to Defendants on Count II.

### C.    Counts III and IV:  ADA and Rehabilitation Act

Finally, Plaintiff claims that Cook County discriminated against him in violation of the ADA and Rehabilitation Act by failing to accommodate his need for crutches and a lower bed bunk. [100] at 9–10.

Because the analysis governing each statute "is functionally identical," courts consider claims brought under both Acts together. *King*, 954 F.3d at 988 (quoting *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015)). Under both Acts, Plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) Cook County denied him the benefits of services, programs, or activities, or otherwise discriminated against him; and (3) the denial or discrimination "was by reason of his disability." *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 853 (7th Cir. 2018) (internal quotation marks omitted); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). In addition, because Plaintiff seeks compensatory damages (as opposed to

17

Case: 1:17-cv-04710 Document #: 139 Filed: 09/17/20 Page 18 of 21 PageID #:1757

injunctive relief), *see* [47], he must also show that Cook County intentionally discriminated against him. *Lacy*, 897 F.3d at 862; *Hildreth*, 960 F.3d at 431.

Defendant argues that Plaintiff's claims fail because he cannot demonstrate he had a "disability" within the meaning of the Acts. [113] at 23. As pertinent to this case, the ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1); *see also* 29 U.S.C. § 705(9)(b) (Rehabilitation Act's definition of disability refers to the ADA. Courts assess whether an impairment substantially limits a major life activity without regard to the "ameliorative effects of mitigating measures, except ordinary eyeglasses or contact lenses." 28 C.F.R § 35.108(d)(1)(viii).

Plaintiff argues that his injured Achilles tendon impaired his ability to engage in the major life activity of walking. [118] at 10. Walking undoubtedly constitutes a major life activity, *Jaros*, 684 F.3d at 672, though "walking with difficulty is not a significant restriction on walking," *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 689 (7th Cir. 2010); *see also, e.g.*, *Jenkins v. Chicago Transit Auth.*, No. 15 C 08415, 2020 WL 868535, at *4 (N.D. Ill. Feb. 20, 2020) (evidence that the plaintiff's fractured toe resulted in "swelling" and a "limp" insufficient to establish an ADA disability where the plaintiff "was still able to walk"). Nor does experiencing some pain while walking "very far distances . . . rise to the level required for a finding of disability." *Pashnick v. United Parcel Serv.*, No. 09 C 565, 2010 WL 4628523, at *3 (N.D. Ill. Nov. 8, 2010) (citing *Fredricksen v. United Parcel Serv., Co.,* 581 F.3d 516, 521–22 (7th Cir. 2009)).

18

Instead, courts only find that an injury has substantially limited a plaintiff's ability to walk under more severe circumstances. For example, the Fourth Circuit held that a plaintiff sufficiently pled an ADA "disability" where he alleged his broken legs and tendons rendered him "completely immobile" for more than seven months. *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 330 (4th Cir. 2014). In a different case, the Seventh Circuit found that genuine issues of material fact existed over whether the plaintiff's neuropathy substantially limited her ability to walk, because the record contained evidence she: (1) could not walk one city block without losing sensation in her right leg and both feet; (2) walked with a cane and had to balance against a wall to avoid falling; and (2) was under a doctor's recommendation to avoid excessive walking. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005).

In light of the above case law, the evidence fails to demonstrate that Plaintiff's injury substantially limited his ability to walk. To the contrary, Plaintiff's deposition testimony reflects that after his injury, he maintained the ability to walk up and down stairs, as well to climb up and down from his bunk, even while he experienced pain and some difficulty. *See, e.g.*, [105-1] at 10 (describing ability to climb four flights of stairs and up and down his bunk between August 1 and October 26, 2016), 13–14 (testifying that he "was still walking" on his ankle in pain between October 26 and November 3, 2016), 29 (describing how he walked "up and down stairs" and climbed "up and down" from his bunk during the "whole time" he was detained at Cook County Jail, notwithstanding the difficulties imposed by his injury). In sum, Plaintiff's

testimony of some pain and modest difficulty walking on his left ankle fails to show substantial limitation.

Plaintiff also claims that his injury substantially limited his ability to get "in and out of bed." [118] at 10. Even assuming getting "in and out of bed" constituted a major life activity under the ADA and Rehabilitation Act, Plaintiff still fails to point to sufficient, non-conclusory evidence demonstrating to what extent his Achilles injury impacted his ability to get in and out of bed and how long these issues persisted. Without further proffer, the evidence indicates merely that Plaintiff experienced some pain while getting in and out of bed, not that he was substantially limited in his ability to do so. No reasonable jury could find that Plaintiff had a qualifying disability on this record. *See, e.g.*, 42 U.S.C. § 12102(2)(A) (major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.")

Because Plaintiff fails to demonstrate a qualifying "disability" under the ADA and Rehabilitation Act, this Court grants summary judgment to Defendants on Counts III and IV.

## IV. Conclusion

For the reasons stated above, this Court denies Plaintiff's motion for summary judgment [99], and grants in part and denies in part Defendants' motion for summary judgment [103]. Plaintiff's third amended complaint [47] stands only as to his claim

against Triplett in Count I; the Court grants judgment in Defendants' favor on Counts II, III, and IV.  In addition, Defendants' motion to exclude the expert opinions of Dr. Ghoubrial [95] is denied without prejudice because this Court did not need to consider—and indeed, did not consider—Dr. Ghoubrial's opinions in deciding the parties' motions for summary judgment.  If appropriate, Defendants may renew their motion within the context of pretrial motions.

Dated: September 17, 2020

Entered:

John Robert Blakey
United States District Judge